OVERSEERS OF THE POOR OF SOUTH BRUNSWICK *v.* OVER-
SEERS OF THE POOR OF EAST WINDSOR.

If the owner of a slave, who is of sufficient ability to maintain such slave, remove into another state, the slave does not acquire a legal settlement in the township where the master had his last legal settlement.

The act respecting slaves *Rev. Laws* 375, fixes the legal settlement of an *unmanumitted* slave, only in the case of insolvency of the master. But in all other cases the owner or his representatives are bound to maintain such slave.

The facts in this case appear in the opinion of the court delivered by EWING, C. J.

Two justices of the peace of the county of Middlesex, at the instance of the Overseers of the poor of the township of South Brunswick, removed a negro man named Jack as a pauper from that township to the township of East Windsor, in the same county. East Windsor appealed to the General Quarter Sessions by whom the order of removal was quashed.

Jack, the pauper, is the slave of John Mount, who at, and prior to, the year 1802, resided and had a legal settlement in the township of E. W., from which in that year he removed into the state of New York, where he now resides, and is of sufficient ability to provide for and maintain the said slave.

It is conceded by the counsel of both sides, and is certainly true, that the Overseers of the poor of a township where a person needs relief, must provide for him, unless and until they can find some other person or township legally chargeable, and that the township where such relief is needed and administered cannot change their burthen to another, unless a legal settlement in such other township can be established.

On the part of S. B. it is shewn that the settlement of John Mount, the owner of Jack, was in the year 1802 when

he left this state, in the township of East Windsor, and it is contended that the legal settlement of Jack is therefore in that township, for that the settlement of the slave follows the settlement of the owner, the slave acquiring a derivative settlement from the owner. And in support of this position, arguments are drawn from an alleged analogy to the derivative settlements of a child from a parent and a wife from her husband, and the cases of *Winchenden* v. *Hatfield,* 4 *Mass. Rep.* 123, *and Dighton* v. *Freetown,* 4 *Mass.* 532 are cited.

In the absence of legislation on this subject, as appears to have been the fact in Massachusetts, these arguments and cases would be entitled to respectful consideration, but our legislature have made provision, and to their enactment alone we must therefore resort for our guide.

By the 25th section of the act respecting slaves, *Rev. Laws,* 375, it is enacted that the legal settlement of every slave manumitted agreeably to the directions of that act, who shall be likely to become a public charge, shall be in that township or place in the state where the owner manumitting such slave shall have a legal settlement at the time of such manumission. By the 26th section of the same act it is enacted, that the owner of any negro or other slave not manumitted according to the directions of that act, his or her heirs, executors or administrators shall be obliged at all times to support and maintain such slave, *Provided,* that if any such owner shall become insolvent and so unable to provide for and maintain his or her slave, who shall by sickness or otherwise be rendered incapable of supporting himself or herself, then such slave shall be deemed a pauper, whose legal settlement shall follow the legal settlement in this state of his or her owner. The first of these sections relates to manumitted slaves, and fixes their place of settlement. The second, to unmanumitted slaves. It imposes on the owners and their representatives the burthen of their maintenance and support, and in one case, and one only, where the owner

is become insolvent, and so unable to maintain his slave, fixes his settlement, the legal settlement in this state of his owner.

The legislature had the subject before them, and they have provided in the whole extent, in such manner as to them seemed proper. They have given a settlement to the manumitted slave. They have given no settlement to the unmanumitted slave, except when the owner shall become insolvent, and so unable to maintain him. But if the position be sound, that the slave on general principles derives a settlement from his master, why expressly provide that the settlement of a manumitted slave shall be that of the owner at the time of manumission? and that the settlement of an unmanumitted slave whose owner is insolvent, and so unable to support him, shall follow the settlement of his owner? It is answered that these sections are merely declaratory and are expressly enacted to dispel doubt and prevent dispute. But this answer, if true, would avail nothing, because they must be taken to comprehend and declare all the law on the subject of the settlement of manumitted and unmanumitted slaves, otherwise the inadmissible absurdity would follow, that the legislature professing to declare the law, have done so in part and have left the rest covered with the very doubts and disputes they sought to dispel.

From this view of the matter it is clear that unless a settlement can be shewn in E. W. in this case under the 26th section the slave not having been manumitted, no settlement exists.

It is admitted by the counsel of South B. that the case is not within the words, but is insisted to be within the equity of that section.

. It is said the owner is not within the state, he has no property here, that a suit cannot be maintained against him in the courts of New York where he resides and has sufficient property, and therefore he is within the reason and spirit which is the equity of the act. But this argument

proceeds on an assumption which cannot be conceded—has not been proved—and is unsound. The courts of the state of New York would entertain a suit and enforce a recovery for the maintenance of the slave. Mount became the owner of the slave under the laws of New Jersey; he subjected himself to all liability which those laws thereby imposed upon him; he entered into an implied contract to provide for and maintain such slave; for where the law imposes a duty it raises an implied contract, (3 *Black. Com.* 160;) such liability, such contract, the courts of New York would enforce; and the case is by no means analogous to that of the courts of one state called on to impose or enforce the penal statutes of another.

If however the courts of New York would not entertain a suit for the maintenance of the slave, still such construction of the section as would extend it to the present case, cannot be admitted. This rule of construing a statute by a supposed equity, however well adapted to the curtness and obscurity of ancient legislation, can rarely have place in modern times. The words of the section are plain and specific, they comprehend one case and one only; the insolvency of the owner and a consequent inability. But the owner here is not insolvent, he is of acknowledged ability. To extend the words then to a case in terms directly opposite, would in fact be to enable the court to legislate by means of this powerful engine, equity.

The case of the *King* v. *Tibbenham*, 9 *East.* 388, has no analogy, and hence affords no rule for the present case. The intent of the statute there the subject of construction, was, to declare a woman pregnant of a bastard child, from that fact, actually chargeable and thereby liable to be removed to her own parish, that the child might be born there, and thereby the burthen of its maintenance be imposed on that parish, and therefore, whether the woman were married or unmarried, if the child were a bastard, precisely the same reason existed. The child and the sup-

port of the child were the primary objects of legislative concern and hence the court of K. B. held the words "every unmarried woman with child," to extend to a married woman pregnant of a child which from the absence of the husband was necessarily a bastard. But under our statute between the inability of the owner from insolvency, and the difficulty of recovering the expenses of maintenance from an owner both solvent and able, a wide difference both in reason and principle exists; they are as little within the same equity as within the same words.

It is farther insisted by the counsel of S. B., that if this strict construction be given to our statute, then the slave in question has no settlement, and therefore would not be a pauper entitled to relief; but this conclusion by no means follows. Every person unable to provide for and maintain himself is, *prima facie*, a pauper entitled to relief. And although some other township, or some person as in case of parent and child provided for by statute, may be subjected to his maintenance, yet the township, in which he may be, must provide for him, and permanently, or at least until his disability is removed, unless they can find some other township or some person legally chargeable. A man may be without any settlement in this State, or by reason of his lunacy or some other cause, his settlement may not be discoverable, yet in the township where he is, he may be a pauper entitled to relief and to be maintained until his settlement be found or his disability removed.

The course of proceeding resulting from the view thus taken of our laws respecting slaves and the poor, will produce no unusual or unaccustomed hardship or inconvenience to a township. In ordinary cases the township must provide for a pauper needing assistance, though he may have no other claim than his poverty on their bounty. So in case of a slave. If his owner is of sufficient ability the law requires him to afford support and thus relieve the township where he may chance to be; if not of ability, from

insolvency, the law gives the slave a settlement and thus relieves such township; but that such township must in the one case seek out the owner, and in the other the place of settlement, is no more duty than on ordinary occasions they find themselves obliged to perform.

On the whole, the slave, Jack, had no legal settlement in E. W.—the order of removal was unduly made.

Let the order of the sessions, quashing the order of removal, be affirmed, with costs.

*Wood* for the plaintiffs in certiorari.

*Wall* and *Scott* for the defendants.